# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ARES DEFENSE SYSTEMS, INC.,**

        **Plaintiff,**

**v.**                                  **Case No:   6:15-cv-1107-Orl-22DAB**

**DIMITRIOS KARRAS, DOUBLE A
INDUSTRIES, INC., LYCURGAN, INC.,
BRYCE STIRLEN, Ares Armor, INC. and
LAKE HOUSE CAPITAL
MANAGEMENT, LLC,**

        **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

    This cause came on for consideration with oral argument[1] on the following motions filed herein:

| | |
|---|---|
| **MOTION:** | **MOTION TO DISMISS FOR LACK OF JURISDICTION OR IN THE ALTERNATIVE, TO TRANSFER VENUE (Doc. 35)** |
| **FILED:** | **November 9, 2015** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

| | |
|---|---|
| **MOTION:** | **MOTION TO DISMISS FOR LACK OF JURISDICTION, MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM OR IN THE ALTERNATIVE, TO TRANSFER VENUE (Doc. 48)** |
| **FILED:** | **December 11, 2015** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

_____

[1] A hearing was held on February 9, 2016.

Plaintiff Ares Defense Systems, Inc. filed suit alleging trademark infringement against (among others) Defendants Dimitrios Karras and his two companies for which he serves as president, Double A Industries, Inc. ("Double A") and Lycurgan, Inc.   This cause comes before the Court on two separate Motions to Dismiss filed by Defendants Karras, Double A Industries, Inc. and Lycurgan, Inc. for failure to state a claim for relief, on the basis of laches, and for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b); or in the alternative, for transfer of venue pursuant to 28 U.S.C. § 1404, 1406.   Doc. 35, 48.

Because the Court finds that laches does not bar Plaintiff's claims, and the Court has personal jurisdiction, it is **respectfully RECOMMENDED** that the Motions to Dismiss be **DENIED** for the reasons set forth in detail below.

## I.        BACKGROUND FACTS

Plaintiff is a firearm manufacturing company located in Melbourne, Florida that has designed, manufactured, and sold a variety of firearms and components under the marks Ares and Ares Defense since 1999.   Doc. 1 ¶ 10.   Defendants Double A and Lycurgan are two companies that each have claimed use of the mark "Ares Armor" since 2010 or 2011; both companies are owned, controlled, and operated by their president, Defendant Dimitrios Karras. *Id* ¶16; Doc. 35-1, ¶ 3. Double A filed a based-on-use U.S. Trademark Application Serial No. 86/163164 ("the Application") for the mark Ares Armor (the "Ares Armor Mark") on January 11, 2014; the Application specified a January 1, 2011 first use date of the Ares Armor Mark on "component parts for guns." Doc. 1 ¶¶11, 13 & Exh. B[2].

On November 18, 2014, Double A assigned the Ares Armor Mark to Lycurgan, which then assigned it to Ares Armor, Inc. ten days later on November 28, 2014. Doc. 1, ¶ 15.   Ares Armor, Inc. subsequently assigned the Ares Armor Mark to Defendant Lake House Capital Management,

_____

[2]  Defendants contend that only Lycurgan used the name "Ares Armor" since 2010.

LLC ("LHCM") the same day, which remains the current owner on the USPTO.gov website. Doc. 1 ¶15). All of these assignments in November 2014 took place after Plaintiff obtained an extension of time to oppose the Application, and were recorded in the USPTO after Plaintiff filed its Notice of Opposition. Doc. 1 ¶ 15.

On July 8, 2015, Plaintiff sued Defendants Karras, Double A, and Lycurgan, for federal and state trademark infringement as well as violation of the Anticybersquatting Consumer Protection Act[3]. Plaintiff also asserted federal trademark infringement claims in the Complaint against the subsequent purchasers[4], Ares Armor, Inc., and Lake House Capital Management, LLC's ("LHCM") and their principal, Bryce Stirlen. Ares Armor, Inc., LHCM, and Mr. Stirlen have answered the Complaint, and Ares Armor, Inc. has admitted to making sales within the State of Florida and this Judicial District. Doc. 27, ¶ 9. Thus, Stirlen, Ares Armor, Inc., and LHCM do not challenge personal jurisdiction in this Court and do not seek to transfer venue. Moreover, their counsel represented at oral argument that they are "taking steps to avoid further disputes" on the trademark issues.

Defendants Lycurgan and Double A represent that they have "sold all interest in the Ares Armor name as part of the asset sale and [they] no longer have any right to use of the name"; Karras maintains he never had any personal proprietary interest in the Ares Armor name. Doc. 48-1, Karras Decl. ¶ 25. The Court's reference to the Movant-Defendants for purposes of this Motion is limited to Defendants Lycurgan, Double A and Karras.

## II.  MOTIONS TO DISMISS

### A. Laches

---

[3] Defendants do not discuss the state trademark or cybersquatting counts separate and apart from federal trademark infringement under the Lanham Act.

[4] At the hearing, the parties did not dispute that the purchase was accomplished on November 28, 2014. *See* Doc. 35-1 ¶ 25.

Defendants argue that the "statute of limitations" precludes Plaintiff's trademark infringement claims against them.   The parties agree on the prevailing law.   "[B]ecause the Lanham Act does not contain a statute of limitations, the period for analogous state law claims is to be used as a touchstone for laches." *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1546 (11th Cir. 1986); *Kason Indus. v. Component Hardware Group*, 120 F.3d 1199, 1203 (11th Cir. 1997).   There is no statute of limitations for Lanham Act claims, but the limitations period for trademark claims in Florida is four years, which is used as a touchstone to demonstrate laches. *AmBrit, Inc.*, 812 F.2d at 1546.

Laches requires a defendant to show "1) a delay in asserting a right or a claim, 2) that the delay was not excusable, and 3) that there was undue prejudice to the party against whom the claim is asserted." *Id.* at 1545.   Defendants contend that Plaintiff was aware Lycurgan publicly began using the Ares Armor mark in April 2010. Doc. 35 at 4 (citing Doc. 1 ¶ 11).   Plaintiff argues that it actually alleged, upon information and belief, that Defendant Karras adopted the subject mark "on or about 2010" with full knowledge of the Ares mark.   Doc. 57 at 4 (citing Doc. 1 ¶11).   However, there are no allegations regarding when *Plaintiff discovered* Karras' use of the Ares Armor Mark, or that Plaintiff "inexcusably delayed"[5] after doing so, or that Karras was unduly prejudiced by any such purported delay, especially since Karras was able to successfully sell his rights in the Ares Armor Mark to Ares Armor, Inc./LHCM, even after Plaintiff filed an extension of time to oppose the Application on September 24, 2014.   Doc. 1 ¶ 14.

Plaintiff contends Defendants are not entitled to dismissal based on laches since they cannot show delay or prejudice.   Plaintiff also points to the first use date of January 1, 2011 specified by

---

[5] Plaintiff contends that it timely opposed the Application, and has been in settlement negotiations with the purported current owner of the mark, LHCM, for many months.

Defendant Double A Industries, Inc.[6] its intent-to-use U.S. Trademark Application for the Ares Armor mark filed on Januay 11, 2014. Doc. 48 at 1-4; Doc. 48-1, ¶¶ 26, 31-34.   Moreover, even assuming that it knew Karras had adopted the mark "on or about 2010," Plaintiff contends that it filed on September 24, 2014 an extension of time to *oppose* the Application, which was filed within four years of the January 1, 2011 first use.   Doc. 1, ¶14.   Although the issue is currently presented as part of a Motion to Dismiss. Defendant Karras presented his own competing Declaration which states that "the website featuring the mark was publicly accessible as of August 19, 2010" and "*Plaintiff* learned of Ares Armor in or about August of 2010."   Doc. 48 at 10 (citing Karras Decl. ¶¶ 10-13, 17-21).   Implicit in Defendant Karras' presentation of a competing declaration is the admission that the matters set forth in Plaintiff's Complaint are not an appropriate basis for dismissal.   As is clear, there are a significant number of factual issues regarding Plaintiff's and Defendants' knowledge of use of the Marks at issue that the Court is not prepared to resolve on a motion to dismiss.

The usual procedure for litigiating a defense of laches is to assert facts supporting the contention as an affirmative defense as part of the answer pursuant to Federal Rule of Civil Procedure 8(c) and then issue can be joined with an appropriate factual record for disposition on summary judgment (if warranted) or at trial following discovery of the facts of the "delay," and whether such delay was "excusable." Such a course is far preferable here. Denial of the Motion to Dismiss on the basis of laches should be without prejudice, and Defendants may assert laches in their Answers and, if warranted, move for summary judgment on the issue once discovery has been conducted.

### B.  Failure to State A Claim

---

[6]  This interest was subsequently transferred to Lycurgan, Inc. Doc. 48-1 ¶ 26.

When deciding a Rule 12(b)(6) motion to dismiss based on a failure to state a claim upon which relief can be granted, the Court limits its consideration to well-pleaded factual allegations, documents central to, or referenced in, the complaint, and matters judicially noticed. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). The court must accept as true the factual allegations in the complaint and draw all inferences derived from those facts in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008); *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam).

According to Federal Rule of Civil Procedure 8(a)(2), to state a claim for relief, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Thus, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007)). In other words, the allegations in the complaint need to be sufficient "to 'raise a right to relief above the speculative level' on the assumption that all the allegations in the complaint are true." *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citing *Twombly*, 127 S.Ct. at 1965). Moreover, "[t]hreadbare recitals of the elements of a cause action, supported by mere conclusory statements, do not suffice," *Iqbal*, 129 S.Ct. at 1949 (citation omitted).

To state a claim under 15 U.S.C. § 1125(a), Plaintiff must state facts supporting the contention that they have "a protectable right" in the Mark. *Klayman v. Freedom's Watch, Inc.*, 765 F. Supp. 2d 1348, 1354 (S.D. Fla. 2008).) "Ownership of trademarks is established by use, not by registration"; thus, a mark need not be registered in order to obtain protection. *Union Nat'l Bank of Texas, Laredo v. Union Nat'l Bank of Texas, Austin*, 909 F.2d 839, 842 (5th Cir. 1990). "To establish that it has a valid trademark, the plaintiff must prove that it used the mark in commerce prior to the defendant's use of the potentially confusing mark." *Knights Armament Co. v. Optical*

*Sys. Tech., Inc.*, 636 F. Supp. 2d 1283, 1297 (M.D. Fla. 2009) (citing *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1022 (11th Cir. 1989).

Movant-Defendants contend that Plaintiff fails to state a claim for trademark infringement because Plaintiff does not allege that it is "the owner" of "Ares" or "Ares Armor" Mark.[7] Plaintiff Ares Defense Systems, Inc. alleges it has designed, manufactured, and sold firearms and components for firearms since 1999 under the marks Ares and/or Ares Defense (the "Ares Mark"). Doc. 1 ¶ 10. Defendants argue that Plaintiff has failed to cite any facts "supporting the strength of protection of its mark" and "any protection of 'Ares' is weak because it is a widely used mythical name used by many third parties in the tactical equipment industry." Doc. 35 at 12 (citing Doc. 35-1 (Karras Decl.) ¶ 15) (emphasis added). Plaintiff has also alleged its use of the Ares mark pre-dates any use of the Ares Armor Mark in 2010 by the Defendants. Doc. 1 ¶¶ 11, 20. Defendants concede as much, stating "[t]he similarity of the marks and products can be inferred from the alleged facts." Doc. 35 at 7.

Defendants argue, however, that Plaintiff has "failed to [allege] any fact supporting the strength of protection of its mark" and any protection of "Ares" is weak. Doc. 35 at 7. "The Lanham Act provides that a trademark may be 'any word, name, symbol, or device, or any combination thereof' that is used or intended to be used 'to identify and distinguish' a person's goods 'from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.' " *Board of Supervisors v. Smack Apparel Co.*, 550 F.3d 465, 475 (5th Cir. 2008) (quoting 15 U.S.C. § 1127). Classifying the type of mark Plaintiff has determines whether it is strong or weak. *Frehling Enterprises, Inc. v. International Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1990) (citing *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 973 (11th

---

[7] To the extent that Defendants argue Plaintiff's claim must fail because it has not stated facts in support regarding Defendants' "bad faith intent to profit from that mark," it is enough that Plaintiff allege bad faith.

Cir.1983)).  The stronger the mark, the greater the scope of protection accorded it, the weaker the

mark, the less trademark protection it receives. *Frehling*, 192 F.3d at 1335 (citing *Harland,* 711 F.2d

at 973).   There are four categories of marks: (1) generic, (2) descriptive, (3) suggestive, and (4)

arbitrary.   *Frehling*, 192 F.3d at 1335 (citing *Freedom Sav. & Loan Assoc. v. Way*, 757 F.2d 1176,

1182 (11th Cir. 1985)).

Defendants appear to concede, at least at this Motion to Dismiss stage, that the Ares Mark

as applied to firearms or tactical equipment is at least suggestive, if not arbitrary or fanciful, in that

Defendants argue that "Ares" is "a mythical name" used "in tactical equipment industry."   Doc. 35

at 7.   "Suggestive terms suggest characteristics of the goods and services and require an effort of

the imagination by the consumer in order to be understood as descriptive"; *e.g.*, "penguin" would

be suggestive of refrigerators.   *Frehling*, 192 F.3d at 1335 (citing *Dieter v. B & H Indus. of S.W.*

*Fla., Inc*., 880 F.2d 322, 327 (11th Cir. 1989) and *Freedom Savings*, 757 F.2d at 1182–83 n. 5).  An

arbitrary mark is a word or phrase that bears no relationship to the product (*e.g*., "Sun Bank" is

arbitrary when applied to banking services). *Frehling*, 192 F.3d at 1335 (*Freedom Savings*, 757 F.2d

at 1182–83 n. 5).   Applied here, Ares is the Greek god of war, thus, the Ares Mark would be

suggestive of "war" or tactical equipment.   As a suggestive mark, the Ares Mark would be

considered a strong mark and entitled to protection.   *See Frehling*, 192 F.3d at 1335 (Italian words

which translated to "beautiful objects" used as a mark on high-end furniture made in Italy was a

suggestive mark entitled to protection).   The issue Defendants raise as to whether others are using

the same word "Ares" in for other marks is a factual issue which is more appropriately raised on

summary judgment.

Defendants also argue dismissal is warranted because Plaintiff has alleged insufficient facts

that Defendants' use of the name "Ares" is likely to cause confusion or mistake.   Plaintiff has

alleged that Defendants' "Ares Armor mark is confusingly similar to the Ares Mark," and actual

confusion has *already* occurred. Doc. 1, ¶¶ 24-25.  "It is self-evident that the existence of actual consumer confusion indicates a likelihood of consumer confusion." *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141 (2d Cir. 2003).  Moreover, likelihood of confusion is a fact-intensive analysis which is generally not suitable to be decided at the motion to dismiss stage.  *See, e.g.*, *Van Praagh v. Gratton*, 993 F. Supp.2d 293, 304 (S.D.N.Y. 2014) (declining to "further inquire into whether the complaint's factual allegations are sufficient with respect to the likelihood of confusion because likelihood of confusion is a fact-intensive analysis that ordinarily does not lend itself to a motion to dismiss") (collecting cases).

Plaintiff alleges that the firearms "Defendants offer under the Ares Armor Mark are highly related, if not identical, to the products that Ares offers under the Ares Mark, and are marketed to the same type of consumers using the same channels of trade and methods of advertising as those of Ares." Doc. 1, ¶¶ 24-25. Defendants argue that Plaintiff fails to state any facts relating to the similarity of the parties' retail outlets or the similarity of advertising media used, besides "the conclusory allegation that they use the same channels of trade and methods of advertising as those" of Plaintiff. Plaintiff sufficiently alleges in the Complaint that the products Defendants sell under the Ares Armor Mark are highly related, if not identical, to the products that Ares offers under the Ares Mark has sold since 1999, and are marketed to the same type of consumers using the same channels of trade and methods of advertising as those of Ares. Doc. 1 ¶ 25. At the hearing, Defendants' counsel conceded that Plaintiff and Defendants both sell firearms and components, even if the precise items being sold by the parties differ, and Defendants' sales are no longer limited to the original store in Oceanside, California, but have expanded to include national internet sales, at least two percent of which were admittedly generated from sales to Florida[8]. Plaintiff's allegations

---

[8]  Defendants' stated this "2%" estimate while simultaneously arguing that they did not have the financial documents because the business had been sold in November 2014.

are sufficient to plead a claim for trademark infringement against the corporate Defendants, Lycurgan and Double A.

Defendant Karras argues (individually and separately in Doc. 48) that he has "never used the Ares Armor name nor had any interest in it" and Plaintiff has not alleged any facts to justify piercing the corporate veil.   Doc. 48-1 at 11-12 (citing Florida cases on piercing the corporate veil). He argues that the corporate Defendants Lycurgan and Double A observed all relevant corporate formalities and they are not "alter egos" of Defendant Karras to justify piercing the corporate veil and name him as a Defendant.   *Id.* ¶ 3.

Plaintiff argues that, under the Lanham Act, individual liability may be imposed on a corporate officer who has directed and controlled the infringing activity, without the necessity of piercing the corporate veil.   Plaintiff cites the Eleventh Circuit's holding in *Babbit Electronics, Inc. v. Dynascan Corporation*, 38 F.3d 1161 (11th Cir. 1994), which held:

> "If an individual actively and knowingly caused the trademark infringement, he is personally responsible." *Chanel, Inc*., 931 F.2d at 1477. Specifically, a corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing of the corporate veil. *Selchow & Righter Co. v. Goldex Corp.*, 612 F.Supp. 19 (S.D.Fla. 1985). Neither [of the defendants] submitted any evidence to contest the fact that they authorized, directed and participated in the infringement of Dynascan's trademark. *See Tanning Research Lab. v. Worldwide Import & Export*, 803 F.Supp. 606, 610–11 (E.D.N.Y.1992) (Court held shareholders and officers personally liable for trademark infringement where the individuals infringed trademark even after notification from the trademark owner).

*Id*. at 1183-84.

Karras attempts to distinguish the facts of *Babbit Electronics*.   However, as the Ninth Circuit explained in *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472 (9th Cir. 1991)[9], a corporate officer may be personally liable for trademark infringement if active in the infringing conduct and even without an additional showing to "pierce the corporate veil":

---

[9]  The Eleventh Circuit cited the *Chanel* case in *Babbitt Electronics*.

Natural persons, as well as corporations, may be liable for trademark infringement under the Lanham Act.   *See Mead Johnson & Co. v. Baby's Formula Serv., Inc.*, 402 F.2d 19 (5th Cir. 1968); 15 U.S.C.A. §§ 1114 & 1127. Because of its very nature a corporation can act only through individuals. "Obviously . . . if there was an infringement by the corporation, this infringement was caused by some one or more persons either officers or employees of the corporation who caused the acts to be done." *Mead Johnson*, 402 F.2d at 23.   If an individual actively and knowingly caused the infringement, he is personally liable. *See id.; see also Wilden Pump & Eng'g Co. v. Pressed & Welded Prods. Co.*, 655 F.2d 984, 990 (9th Cir. 1981) (in analogous patent infringement context, individual will be liable if he is "moving, active, conscious force" behind infringement).   Applying this standard to Brody, we agree no genuine issue exists on his personal liability. Brody was the president and chief executive officer of Italian Activewear. It was he who purchased the counterfeit goods from Sola; he who advertised the goods as Chanel products in local publications; and he who operated the showroom from which the goods were sold.

*Id.* at 1477-78.   *See also Selchow & Righter Co. v. Goldex Corp.*, 612 F. Supp. 19 (S.D.Fla. 1985) (holding corporate officer who primarily handled the arrangements for shipping the infringing product and credit card payments of the goods was responsible for infringement); *cf. Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1354 (11th Cir. 2013) (rejecting defendant corporate officer's contention that any trademark infringing actions he took on behalf of his corporation were protected by corporate shield doctrine because the doctrine is "inapplicable where the corporate officer commits intentional torts").   Plaintiff's allegations that Karras personally participated in and directed Double A and Lycurgan's infringement of the Ares Mark by operating the Defendant corporations, establishing the interactive website in his name, and signing the trademark applications on behalf of the corporations, are sufficient to plead a claim for trademark infringement against Defendant Karras individually.

### C.  Personal Jurisdiction

All three Movant-Defendants argue that dismissal pursuant to Rule 12(b)(2) for lack of personal jurisdiction is warranted because the Court does not have personal jurisdiction over them. They argue that they do not have minimum contacts with the state of Florida and subjecting them to personal jurisdiction in Florida would violate federal due process.   Plaintiff counters that the

Court has personal jurisdiction over all three Movant-Defendants under Florida Statute § 48.193(1)(b) because they have committed tortious acts within Florida by making allegedly-infringing sales in the state.   Plaintiff argues that a non-resident is properly subject to the jurisdiction in the state when the non-resident engages in intentional conduct—in this case trademark infringement—calculated to cause injury in the state. Doc. 40 at 11; Doc. 57 at 13 (citing *Calder v. Jones*, 465 U.S. 783, 789 (1984)). Plaintiff further argues that the exercise of jurisdiction would comport with constitutional due process requirements.

"The determination of personal jurisdiction over a non-resident defendant requires a two-part analysis." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (citation omitted). First, there must be a basis for jurisdiction under the Florida long-arm statute, which confers specific personal jurisdiction over any non-resident who commits a tortious act within the state. *Id.* (citing *Cable/Home Comm. Corp. v. Network Prods., Inc.*, 902 F.2d 829, 919 (11th Cir. 1990)); *see* Fla. Stat. § 48.193(1). Second, exercising the specific personal jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Madara*, 916 F.2d at 1514 (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

### 1. Florida Long-Arm Statute

A defendant's physical presence is not necessary to commit a tortious act in Florida. *Calder*, 465 U.S. at 789.   "The commission of a tort for purposes of establishing long-arm jurisdiction does not require physical entry into the state, but merely requires that the place of injury be within Florida."   *Future Tech. Int'l, Inc. v. Tae II Media, Ltd.*, 944 F. Supp. 1538, 1558 (S.D. Fla. 1996). "The Florida long-arm statute provides two bases for the exercise of personal jurisdiction: specific and general jurisdiction."   *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010).   In this case, Plaintiff argues that the three Defendants are subject to the Court's

jurisdiction because Defendants operated an interactive website (http://aresarmor.com) selling products bearing the infringing mark at issue and have sold the infringing products in Florida.

A court may exercise specific personal jurisdiction over a defendant who commits one of the series of acts provided in section 48.193(1).   Florida's long-arm statute states, in pertinent part:

> (1)(a) Any person . . . who . . . does any of the acts enumerated in this subsection thereby submits himself . . . to the jurisdiction of the courts of this state for any cause of action arising from the following acts:
>> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>> 2. Committing a tortious act within this state.

Fla. Stat. § 48.193(1)(a)(2)(2013).

Where a defendant is found to have undertaken one of the acts enumerated in section 48.193(1), and the cause of action arises from or relates to that act, the long-arm statute has been satisfied. *See Carmel & Co. v. Silverfish, LLC,* No. 1:12–cv21328–KMM, 2013 WL 1177857 at *2 (S.D.Fla. Mar. 21, 2013); *Smith v. Trans–Siberian Orchestra*, 728 F.Supp.2d 1315, 1320 (M.D.Fla. 2010).   "In Florida, before a court addresses the question of whether specific jurisdiction exists under the long-arm statute, the court must determine whether the allegations of the complaint state a cause of action." *PVC Windoors*, 598 F.3d at 808 (quoting *Wendt v. Horowitz*, 822 So.2d 1252, 1260 (Fla. 2002)).

Trademark infringement has been recognized as a tortious act within the context of 48.193(1)(b).   *See Licciardello*, 544 F.3d at 1283 ("We have held that § 48.193(b) . . . permits jurisdiction over the nonresident defendant who commits a tort outside of the state that causes injury inside the state. . . . [T]he Florida long-arm statute is satisfied if the alleged trademark infringement on the website caused injury in Florida."); *Roca Labs, Inc.,* 2013 WL 2025806 at *3 (M.D. Fla. May

14, 2013)(same).   The only issue for purposes of § 48.193(1)(a)(2) is whether Defendants' alleged trademark infringement[10] occurred "within" the state of Florida.

Plaintiff contends that trademark infringement has been found to be a "tortious act" in the context of Florida long arm statute.   *See, e.g,. Nida Corp. v. Nida*, 118 F. Supp. 2d 1223, 1228 (M.D. Fla. 2000) ("Injury from trademark infringement occurs in the state where the trademark owner resides."); *Roca Labs, Inc.*, 2013 WL 2025806 at *3 (holding trademark infringement that occurs over a website and causes harm to a Florida-based business satisfies the long arm statute's specific jurisdiction requirement).   As Judge Covington explained in applying the Florida long arm statute in the Middle District of Florida case, *Roca Labs:*

> Tortious acts committed through website postings, however, present a unique challenge: Unlike a phone call, chatroom conversation, or fax, images or words posted to a website are not electronic communications in the traditional sense. *Internet Solutions Corp. v. Marshall*, 39 So.3d 1201, 1210–11, (Fla.2010). First, they are not generally directed at any particular person or even a particular state. Id. Second, even when directed at a particular person or state, the website is still accessible from virtually any forum. *Id*.
>
> A variety of tests have been developed to determine whether website activity may constitute an electronic communication into Florida. See Trans–Siberian Orchestra, 728 F.Supp.2d at 1321. For example, in 2008 the Eleventh Circuit employed the "accessibility test," to determine whether a website constituted an electronic communication into Florida. *See Licciardello*, 544 F.3d at 1282–84. Under that test, a website's posting which allegedly infringed a plaintiff's trademark was found to have "clearly ... occurred in Florida by virtue of the website's accessibility in Florida." *Id.* at 1283. However, in *Licciardello*, the Eleventh Circuit declined to resolve the question of "whether trademark injury necessarily occurs where the owner of the mark resides, as the Florida district courts have held," because the court was able to resolve the question of whether the alleged infringement occurred in Florida on the alternate basis of accessibility. *Id.*
> * * *
> [The Eleventh Circuit] "concluded that, although the posting of defamatory material about a Florida resident on a website alone did not constitute the commission of a tortious act under § 48.193(1)(b), the posting of such that was both *accessible* in Florida and *accessed* in Florida constituted the commission of a tortious act of defamation within Florida under § 48.193(1)(b)." *Id.* (emphasis in original).

---

[10] Defendants do not specifically discuss dismissal of the claim for violation of the Anticyberquatting statute.

> Although *Internet Solutions* analyzed the long-arm statute in the context of a defamation case, its holding has been extended to trademark infringement actions as well. *See Jackson–Bear Grp., Inc. v. Amirjazil,* No. 2:10–cv–332–FtM–29SPC, 2011 WL 1232985, at *5–6 (M.D.Fla. Mar.30, 2011) (evaluating evidence as to whether any Florida resident accessed the relevant website in determining whether the alleged trademark infringement occurred in Florida under section 48.193(1)(b)); *Mercury Enters., Inc.v. Vesta Mgmt. Grp., LLC,* No. 8:12–cv–417–T–30MAP, 2012 WL 2087439, at *2 (M.D.Fla. June 8, 2012) ("The First Amended Complaint satisfies § 48.193(1)(b) because it alleges . . . a Florida resident accessed [defendant's] website in Florida.").

*Id.* at *4.  In another Middle District case, *R & R Games, Inc. v. Fundex Games, Ltd.,* 2013 WL 784397, the court summarized the state of the law on trademark infringement through internet sales:

> Section 48.193(1)[(a)(2)] permits jurisdiction over a defendant who 'committ[ed] a tortious act within this state.' Florida's intermediate appellate courts are divided on the reach of subsection (1)[(a)(2)], and the Florida Supreme Court has refrained from deciding the broader question of 'whether injury alone satisfies the requirement of section 48.193(1) (1)[(a)(2)].' *Internet Solutions Corp. v. Marshall,* 39 So.3d 1201, 1206 n. 6 (Fla. 2010).  The Eleventh Circuit, noting the division, applies a broad construction of subsection (1)[(a)(2)], under which courts may exercise personal jurisdiction over a nonresident defendant if a tort committed outside Florida causes injury in Florida. *See Licciardello v. Lovelady,* 544 F.3d 1280, 1283 (11th Cir. 2008); [*Posner v. Essex Ins. Co., Ltd.,* 178 F.3d 1209, 1217 (11th Cir.1999)]. Utilizing this broad construction, courts within the Eleventh Circuit have consistently held that allegations of intentional tortious conduct, including trademark infringement, occurring outside Florida are sufficient for long-arm jurisdiction if the plaintiff suffered harm in Florida.

*Id.* at *2.

In this case, Plaintiff argues that Defendants' trademark infringement, which occurred over their website, caused harm to Plaintiff's Florida-based business in Florida, and satisfies the long arm statute's specific jurisdiction requirement.  *See also Carmel,* 2013 WL 1177857, at *4 ("There is alleged trademark infringement outside of Florida of a trademark owned by a Florida resident, on a website accessible in Florida.  This is sufficient to establish specific jurisdiction under § 48.193(1)(b) over [defendant] due to its committing a tortious act in Florida."); *Roca Labs, Inc.,*

2013 WL 2025806 at *3 (holding trademark infringement on website caused harm to a Florida-based business and satisfied the long arm statute's specific jurisdiction requirement).

Defendant contends that the cases cited by Plaintiff do not apply here because Plaintiff has not alleged any facts indicating that the Ares Armor website "was accessed by, and caused the confusion of, consumers" in Florida, and that "[a]ny injury caused to [Plaintiff] took place in California, where the majority of Defendant's customers and all of its operations were located." Doc. 35 at 14-15.   To the contrary, Plaintiff alleged in the Complaint that Defendants are selling firearms and components over the internet with the domain names "aresarmor.com" and "aresarmorinc.com" which allegedly infringes Plaintiff's Ares trademark.   Doc. 1 ¶ 37.   As the Court discussed above, Defendants admitted at the hearing to at least some portion of internet sales in the state of Florida, whether or not they were intentionally directed at Florida, sales were made to individuals in Florida[11], and Plaintiff was harmed in Florida; thus, the Court has jurisdiction under § 48.193(1)(b) over the Defendants.   *See R & R Games, Inc. v. Fundex Games,* 2013 WL 784397 at *3 ("[Defendant's] lack of business activity targeting Florida residents does not contradict allegations that it infringed [the plaintiff's] trademark while conducting other business activity, which resulted in harm to [the plaintiff] in Florida."); *Roca Labs*, 2013 WL 2025806 at *6 (defendant failed to rebut the allegation that the websites infringed plaintiff's marks and resulted in injury incurred by the plaintiff in Florida, and thus has failed to provide evidentiary support for its jurisdictional challenge).

Defendants cite two inapposite cases in arguing that the Court lacks personal jurisdiction over them.   Defendants rely on the Eleventh Circuit's 1996 decision in *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627-29 (11th Cir. 1996) which has become rather dated, having been decided

---

[11]   Defendant Karras states in his Declaration that over the course of five years, the sum total of "instances of economic activity with Florida" is approximately 2% of the income to Lycurgan. Doc. 35-1, Karras Decl. ¶ 31.

before commercial internet sales became as commonplace as they are today.   Defendants also cite a district court decision in *Alternate Energy Corporation*, in which a Nevada corporation brought a defamation action in Florida against a Michigan-based operator of an independent website for hydrogen use in the fuel cell industry that sold no merchandise. 328 F. Supp 2d 1379, 1384 (S.D. Fla. 2004). The court held that the Michigan-based operator selling subscriptions to small number of Florida residents on the private portion of the website did not by itself satisfy "carrying on business" criterion of Florida long-arm statute, and there was "no indication that Defendant's actions caused more harm to Plaintiff in Florida than anywhere else."   Both cases were based on a separate subsection of the Florida Statute, currently renumbered as § 48.193(1)(a)(1), which provides personal jurisdiction over defendants who are "carrying on a business or a business venture" or have an office or agency in Florida—and *not* on the subsection at issue in this case, subsection (a)(2), which bases jurisdiction on commission of a "tortious act." The cases Defendants cite are distinguishable on this basis alone. Moreover, these cases were decided prior to the cases specifically addressing personal jurisdiction for trademark infringement based on commercial internet-based sales allegedly infringing a trademark owned by a Florida citizen, which are discussed at length above.

### 2. Due Process

Having found that Florida's long-arm statute confers specific jurisdiction over Defendants under § 48.193(1)(a)(2), the remaining question is whether exercising that jurisdiction comports with Due Process. *Louis Vuitton Malletier v. Mosseri*, 736 F. 3d 1339, 1355 (11th Cir. 2013).   Due process requires that a defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1940).

The Court examines the following factors to determine whether an exercise of jurisdiction comports with Due Process:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the non-resident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Louis Vuitton,* 736 F. 3d at 1355 (citations omitted).   Although posting information on a website is fundamentally different from directing a phone call, email or letter into a forum, "[t]he Internet does not provide cause to abandon traditional principles guiding the personal jurisdiction analysis." *Goforit Entertainment LLC v. Digimedia.com L.P.*, 513 F. Supp. 2d 1325, 1329 (M.D.Fla. 2007) (citations omitted).   However, courts have adapted the minimum contacts analysis to address the unique nature of Internet activity. "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (citation and internal quotation marks omitted).

## 1.   Minimum Contacts

Jurisdiction may be found where a defendant's "conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). A defendant is considered to have "fair warning that a particular activity may subject [it] to the jurisdiction of a foreign sovereign" if the defendant has "purposefully directed his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (internal quotations and citations omitted). "So long as it creates a substantial connection with the forum, even a single act can support jurisdiction." *Id.* at 476.   As the Eleventh Circuit noted in *Licciardello*, "[i]ntentional torts are such

acts, and may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum." 544 F.3d at 1285 (citing *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)).

The Eleventh Circuit applies the "effects" test for purposes of determining specific jurisdiction in intentional tort cases. *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 n. 28 (11th Cir. 2009). The effects test requires that a defendant must have "(1) committed an intentional tort (2) that was directly aimed at the forum, (3) causing an injury within the forum that the defendant should have reasonably anticipated." *Id.* "[W]here a defendant's tortious conduct is intentionally and purposefully directed at a resident of the forum, the minimum contacts requirement is met, and the defendant should anticipate being haled into court in that forum." *New Lenox Indus., Inc. v. Fenton*, 510 F.Supp.2d 893, 904 (M.D.Fla. 2007).

Movant-Defendants in this case argue that they do not have the minimum contacts with Florida sufficient to be considered purposeful availment, but they admit that they have an interactive website and at least a few resulting sales to several customers of Lycurgan located in Florida.   Doc. 35-1 (Karras Decl.) ¶ 30.   They contend without access to their files that it is impossible to determine the number of customers or the amount of sales, though Karras estimates "from memory and to the best of his knowledge" it was "most likely around" 2% of sales. *Id.* ¶ 31. Defendants argue that these Florida customers "stumbled" upon the California company's website to make a purchase; Lycurgan never sent any sales representatives to Florida or directed marketing efforts at Florida residents, and Double A did not have any customers in any state. *Id.* ¶¶ 28, 31, 35. They argue that the number of sales to Florida was "disproportionately low" considering the scope of the Ares Armor website, and the quantity of purchases from the website (and store) in California, thus, Defendants cannot be said to have purposefully availed themselves of Florida's jurisdiction

In disputing personal jurisdiction, Defendants rely on a case from outside the Eleventh Circuit,

*Shamsuddin v. Vitamin Research Prods*, 346 F. Supp. 2d 804, 813 (D. Md. 2004). The case of *Shamsuddin* is easily distinguishable because it was patent infringement case, not a trademark infringement case, and the court found insufficient minimum contacts based on only *two* sales of the allegedly infringing product to Maryland residents who were acquaintances of plaintiff.   346 F. Supp. 2d at 813.   Defendants also cite the Middle District case of *Instabook Corp. v. Instantpublisher.com*, 469 F. Supp. 2d 1120, 1126 (M.D. Fla. 2006), in which the court declined to exercise personal jurisdiction over a defendant who had total sales to two Florida residents.   Here, Plaintiff alleges willful trademark infringement, and Defendant Karras – although he no longer has access to sales records—estimates "from memory and to the best of his knowledge" sales in Florida comprised "most likely around 2%" of its sales.   Doc. 35-1 ¶ 31.   Karras also admits purchasing products in 2012 and 2013 from a company in Florida, although he asserts (without evidentiary support) that this vendor "made up a small percentage of the purchases that Lycurgan made, most likely around 2%."   Doc. 35-1 ¶ 32.

In this case, Plaintiff alleges Defendants committed trademark infringement by using Plaintiff's trademarks on a fully interactive website, making sales to Florida consumers, and causing injury in the jurisdiction, which satisfies due process concerns.   Plaintiff has alleged that the Defendants used the Ares Armor Mark and the <aresarmor.com> website after being made aware of Plaintiff's objection to the website, and Defendants have admitted using the interactive website <aresarmor.com> to make sales to Florida residents.

Defendants' allegedly infringing conduct is sufficient to satisfy due process. *See Louis Vuitton*, 736 F.3d at 1357 (finding purposeful availment where a defendant "purposefully solicited business from Florida residents through the use of at least one fully interactive, commercial website, 'pendoza.com.'" and "received orders from multiple Florida residents to ship goods into Florida"); *Roca Labs, Inc.*, 2013 WL 2025806 at *5-6 (finding the effects test satisfied because the defendant

was alleged to have committed an intentional tort against plaintiff using its registered marks on various websites to direct customers to the competing product and to profit therefrom); *Mighty Men of God, Inc*., *v. World Outreach Church of Murfreesboro*, 102 F. Supp.3d 1264 (M.D.Fla. 2015) (finding personal jurisdiction where defendants intentionally infringed plaintiff's marks by maintaining websites, and marketing products featuring their mark, which resulted in contact with the forum and even though "minimal" was the direct cause of plaintiff's claims).

Defendants' alleged trademark infringement satisfies the effects test for personal jurisdiction—"the commission of an intentional tort, expressly aimed at a specific individual in the forum whose effects were suffered in the forum." *Licciardello*, 544 F.3d at 1288. "[B]ecause [defendant's] intentional conduct in [its] state of residence was calculated to cause injury to [plaintiff] in Florida . . . [defendant] cannot now claim surprise at being haled into court here." *Id.* (internal citations omitted).  Defendants' conclusory statements that they have not purposefully directed their website towards Florida, or have minimal sales or purchases in Florida, is insufficient to rebut Plaintiff's allegations.  *See, e.g., Roca Labs, Inc.*, 2013 WL 2025806 at *6 (holding that the defendant's vice president's averment that it "does not direct its websites at Florida" failed to rebut plaintiff's allegations of trademark infringement).

## 2. Fair Play and Substantial Justice

The Court must next decide whether exercising personal jurisdiction over Defendants comports with traditional notions of fair play and substantial justice.   While courts rely on a number of factors when conducting an analysis of traditional notions of fair play and substantial justice, there are three factors of particular importance: (1) the burden on the defendant in defending the lawsuit, (2) the forum state's interest in adjudicating the dispute, and (3) the plaintiff's interest in obtaining convenient and effective relief. *Madara v. Hall*, 916 F.2d 1510, 1517 (11th Cir.1990). "When minimum contacts have been established, often the interests of the plaintiff and the forum

in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 114, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

Defendants argue that subjecting them to personal jurisdiction in Florida would violate federal due process and offend traditional notions of fair play and substantial justice due to Defendants' insufficient Florida contacts and severe burden on them to travel to Florida to defend themselves.   They contend that Defendant Lycurgan "merely maintained a website, accessible from anywhere in the world," had a "few isolated sales" and "very few past customers" in Florida (although it does not actually have the records to support this statement) and a supplier in Florida; and Double A had no contact of any sort with Florida.   Doc. 35-1 ¶ 28, 31.   Defendants argue that they do not own any property or other assets, promote their company or products, or even travel in Florida for business purposes. *Id*. ¶¶ 31-37.   Defendant Karras argues that he would be greatly burdened by defending a lawsuit in Florida because he has no net worth—despite the sale of the business for $900,000—and he is unable to find work due to the non-compete agreement with Stirlen, thus, he could not afford out-of-state travel[12]. Doc. 48-1 ¶ 38.

They contend that Florida's interest in adjudicating the claims of a Florida Plaintiff against an interstate company "against federal and non-statutory claims is minimal at best."   Doc. 35 at 14. Defendants do not discuss the fact that Count II of Plaintiff's Complaint is a claim for trademark infringement and unfair competition under Florida common law.   Defendants' final argument is Plaintiff and Defendant Lycurgan both have an online presence that spans the country, and "Florida does not have any interest significantly greater than that of other states."

Defendants cite the decision of the presiding District Judge Conway in this case, from *Internet Solutions Corp. v. Marshall*, Case No. 6:07-cv-1740-22KRS (M.D. Fla. Sept. 29, 2010),

---

[12] Karras was present in person at the hearing on February 9, 2016.

following remand from the Eleventh Circuit and the Florida Supreme Court's answer to a certified question regarding whether certain internet activity–alleged defamation—would suffice as "tortious conduct" for personal jurisdiction over a non-resident owner of the website.   Following remand, Judge Conway found that the non-resident's website was *not* an "active" website, *i.e.*, one that allowed users to view the website and enter into contracts over the Internet with the host, and the appellate court had previously decided as law of the case that there was no *commercial* activity associated with the website.   *Id.* at 7 (citing *Miami Breakers Soccer Club, Inc. v. Women's United Soccer Ass'n,* 140 F. Supp. 2d 1325, 1329 (S.D. Fla. 2001) (citations omitted)).   Here, the facts are readily distinguishable from those of *Internet Solutions* because Defendants have sold their allegedly infringing products to Florida residents, bought supplies from a Florida vendor, and entered into contracts with these Florida individuals and companies.   Thus, subjecting these Defendants to suit in Florida would not offend traditional notions of fair play and substantial justice.

Even though the burden on Defendants having to defend the suit in Florida may be significant, this burden is outweighed by Plaintiff's strong interest in obtaining convenient and effective relief from the alleged trademark infringement.   "In this case, the Florida plaintiff, injured by the intentional misconduct of a nonresident expressly aimed at the Florida plaintiff, is not required to travel to the nonresident's state of residence to obtain a remedy. . .   "Additionally, Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida."   *Licciardello*, 544 F.3d at 1288; *Roca Labs*, 2013 WL 2025806 at *6.   In this case, exercising jurisdiction over these Defendants comports with fair play and substantial justice.   Accordingly, the Court has personal jurisdiction over Plaintiff's claims against the Defendants.

### III.   VENUE AND TRANSFER

Defendants contend that venue is lacking in the Middle District of Florida and the Court should dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue.   For venue purposes, a defendant that is a corporation "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2).   In states with multiple districts, the corporation "shall be deemed to reside in any district in that State within which its contracts would be sufficient to subject it to personal jurisdiction if that district were a separate State."   28 U.S.C. § 1391(d).   Plaintiff argues in response that where more than one forum is potentially proper, the Court should determine "whether the district the plaintiff chose has personal jurisdiction over the defendants, whether or not other forums had greater contacts."   Doc. 40 at 16 (citing *Lisseveld v. Marcus*, 173 F.R.D. 689, 700 (M.D. Fla. 1997)).

Defendants argue that venue is not proper in Florida but is proper in California because that is the state where the defendants reside[13] and where, they contend, "a substantial part of the events or omissions giving rise to the claim occurred."   28 U.S.C. § 1391(b)(1), (b)(2).   As the Court has already determined, in this case, Florida is where "a substantial part of the events or omissions giving rise to the claim occurred," because it is where the Melbourne, Florida Plaintiff was injured by the intentional misconduct of the non-resident Defendants.   *See, e.g., Licciardello*, 544 F.3d at 1283-84 (holding the effects of the commission of the intentional tort of trademark infringement aimed at a specific individual in Florida were suffered in Florida).   Accordingly, venue is proper in the Middle District of Florida because Melbourne, Florida is within the Middle District.

Defendants' arguments for transfer of venue to the Southern District of California are equally unavailing, since they are based on the proposition that "venue is laid in the wrong district" because

---

[13] Counsel for Defendant Karras stated at the hearing that Karras has relocated to and now resides in Las Vegas, Nevada.   The relocation would make Karras' citizenship Nevada, not California.

the Court has no personal jurisdiction over Defendants.   Doc. 35 at 15.   The Court has already determined it has personal jurisdiction over Defendants.

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).   The burden is on the defendant, as the moving party, to establish that there should be a change in forum. *See Garay v. BRK Electronics*, 755 F.Supp. 1010 (M.D.Fla.1991). When a transfer "merely shifts the inconvenience from one party to another, the plaintiff's choice of forum should remain." *Eye Care International, Inc. v. Underhill*, 119 F.Supp.2d 1313, 1319 (M.D.Fla. 2000) (holding transfer not warranted).   Unless the balance strongly favors the movant, "plaintiff's choice of forum will rarely be disturbed."   *Id.* at 1317.

Plaintiff contends that its choice of forum should be deferred to unless it is "clearly outweighed" by other considerations; Defendants have failed to meet the high standard required to justify transfer from the preferred Florida venue; and the Movant-Defendants are just attempting to shift the inconvenience to Plaintiff and the other three Defendants (who do not join in the Motion). Doc. 40 (citing *Robinson v. Giarmarco & Bill P.C.*, 74 F.3d 253, 260 (11th Cir. 1996)).

Defendants argue that the Court should transfer the case to the Southern District of California for their convenience and their witnesses' convenience.   Doc. 35 at 16-17.   Defendants also base their argument for transfer on the erroneous premise that a "substantial part of the events giving rise to the [trademark infringement] claims took place in California."   Doc. 35 at 17.   The Court has determined, to the contrary, that a substantial part of the events giving rise to Plaintiff's trademark infringement claims occurred where the effects of Defendants' trademark infringement were felt in Florida, and transfer would not be appropriate on that basis.

Defendant Karras argues that Defendants are "predominantly based" in the Southern District

of California, as Ares Armor, Inc.[14] has its shop there.   Doc. 35-1, Karras Decl ¶ 8.   He argues that

the cost of litigation in Florida, as opposed to California, would impose an unreasonable and unfair

burden on all three of the Movant-Defendants, who would suffer severe financial hardship—with

the resulting inability to afford the cost of defending the claims—if the case remained in Florida. *Id*.

¶ 38.   Defendants also argue that the Southern District of California will be more convenient for

the witnesses[15], who will testify as to all matters related to the formation and operation of the

allegedly infringing mark, and accounting matters.   Defendants argue that traveling to Florida for

the litigation would require that the witnesses take leave from work to travel, and suffer a loss of

income.

Plaintiff argues that eight people are hardly a sufficient number to justify the transfer of this

case, especially since Defendants have not described what these witnesses know or their testimony,

and if six former employees have the same knowledge, then it is unlikely that they will all need to

be deposed.   Plaintiff also argues that the Movant-Defendants contend that they no longer have any

sales or purchase documents, so they cannot justify transfer because of the location of those

documents because, even presuming relevant documents are located in California, with the

technological advancements in document imaging and retrieval, it is unlikely that document

production will be unduly burdensome.   In this day and age of technology, aside from the cost and

inconvenience to Defendant Karras who is a party not a witness—much of the inconvenience to the

witnesses can be reduced through video recording their depositions in California (if all seven are

even necessary).   Plaintiff is located in Florida and two of the other three (non-movant) Defendants

are located in Illinois and the Southern District of California would not be particularly convenient

---

[14]  Ares Armor, Inc. has not moved to transfer.

[15]  Mike Rogers, Ryan Visket, Wilson Campbell, Alina Mazurenko, Jennifer Rogers, Jeremy Tuma, and "possibly others" reside in California.   The accountant for these Defendants, Morey Holzman, resides in Escondido, San Diego County, California.   Doc. 35 at 17.

to them.   Movant-Defendants have failed to meet their burden in support of transfer to the Southern District of California[16].

## CONCLUSION

It is respectfully **RECOMMENDED** that Defendants Double A. Industries, Inc., and Lycurgan, Inc.'s Motion To Dismiss, Or In The Alternative, Transfer Venue (Doc. 35) and Defendant Dimitri Karras' Motion To Dismiss, Or In The Alternative, Transfer Venue (Doc. 48) be **DENIED**.

A party waives the right to challenge on appeal a finding of fact or conclusion of law adopted by the district judge if the party fails to object to that finding or conclusion within fourteen days after issuance of the Report and Recommendation containing the finding or conclusion.

Recommended in Orlando, Florida on March 10, 2016.

_David A. Baker_
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy

---

[16] Defendants chose to rely on their briefs and did not make any additional argument at the hearing on the issues of venue or transfer.